UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GARFIELD HOWARD** | **CIVIL ACTION** |
| **VERSUS** | **NO. 04-2684** |
| **WILLIAM HUNTER, SHERIFF, ET AL** | **SECTION "F"(5)** |

### REPORT AND RECOMMENDATION

Plaintiff, Garfield Howard, a prisoner currently incarcerated in Orleans Parish Prison ("OPP"), has filed the instant *pro se* and *in forma pauperis* complaint with this court pursuant to 42 U.S.C. §1983. Plaintiff has named as defendants William Hunter, the acting Orleans Parish Criminal Sheriff during the pertinent time period, along with Lieutenant Brown and "Deputy Ms. Dray"[1], both of whom worked at OPP during the pertinent time period. Based upon plaintiff's allegations, as set forth in his original complaint (rec. doc. 1), amended complaint (rec. doc. 13), and during a January 12, 2005 preliminary conference (rec. doc. 14), along with the documentation filed into the record pursuant to this court's order (rec. doc. 22), the following facts have been discerned.

On June 8, 2004, plaintiff was involved in an altercation. Plaintiff states that four inmates "jumped" him (rec. doc. 1). The incident report (rec. doc. 22) reflects that on June 8, 2004, at 12:30

---

[1] Documentation filed into the record pursuant to this court's order reflects that defendant's actual name is "Drake" rather than "Dray". Accordingly, defendant shall henceforth be referred to as Deputy Drake.

p.m., plaintiff, along with two fellow inmates, Niroko Washington and Jerome Johnson, were involved in a fight.  Plaintiff complains that the fight took place because inmates, having access to "cleaning tools", such as mops, brooms and buckets, were left unsupervised for approximately two hours when Deputy Drake left her post.  Plaintiff further complains that following the altercation, Lieutenant Brown, after taking his statement, sent him first to a holding cell and then, four to five hours later, to a different tier, without having him examined by medical personnel.  Plaintiff also states that in connection with medical care he was receiving at Charity Hospital, an unidentified deputy pushed him into a metal food warmer which caused soreness and bruising to his already injured arm.[2]

An *in forma pauperis* complaint may be dismissed if it is determined that the allegation of poverty is untrue, or if the action or appeal is frivolous, malicious, fails to state a claim for which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §1915(e)(2).  The court has broad discretion in determining the frivolous nature of the complaint.  *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds by Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993).  In doing so, the court has ". . . not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions

---

[2] Plaintiff's claim of being pushed into a metal food warmer at Charity Hospital is set forth in his amended complaint (rec. doc. 13) wherein he names no additional defendants and which chiefly consists of numerous quotes from the "Prisoners' Self Help Litigation Manual", along with copies of several of plaintiff's administrative grievances.

are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989); *see also Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994). Thus, a complaint is frivolous "if it lacks an arguable basis in law or fact." *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994) (citation omitted); *Booker*, 2 F.3d at 116. Under the broadest reading of his complaint,[3] plaintiff's allegations lack any arguable basis in law and should be dismissed as frivolous and for otherwise failing to state a claim for which relief can be granted.

To hold someone liable based upon his or her alleged failure to afford protection against an attack at the hands of a fellow inmate, a plaintiff must show not only "that he was 'incarcerated under conditions posing a substantial risk of serious harm,'" but also "'that prison officials were deliberately indifferent to his need for protection.'" *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998), *quoting Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995). "'In order to act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."'" *Id.*, *quoting Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994).

In the instant matter, there is no evidence reflecting that plaintiff, prior to the June 8, 2004 altercation, had any problems with the inmates housed on his prison tier. A review of plaintiff's numerous grievances (rec. doc. 22) reflects that he filed no complaints regarding any of his fellow inmates prior to the June, 2004 incident. Further, plaintiff was not blameless in connection with the

---

[3]The court must liberally construe a *pro se* civil rights complaint. *See Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).

incident. A review of his disciplinary report (rec. doc. 22) reflects that he pled guilty to the following charges: 1) Code 003 - Fighting with Another Person; 2) Code 306 - Conduct which Disrupts or Interferes with the Security or Orderly Running of the Institution.

With regard to plaintiff's claim that the fight broke out because Deputy Drake left the prisoners unattended, the pertinent log entries (rec. doc. 22) reflect that Deputy Drake, shortly before the fight broke out, performed a "visual security check" of the area, and shortly after the fighting commenced, informed "control" of the situation and requested that "rank" be sent to the tier. Additionally, the pertinent log entries reveal that Deputy Drake was not the only deputy assigned to the tier on the date at issue. Finally, even if Deputy Drake was away from her post when the fighting occurred, said absence would be attributable to negligence, rather than deliberate indifference, on her part. As noted above, plaintiff had lodged no grievance which would have placed Drake, along with other prison officials, on notice that an outbreak of violence may occur. The law is clear that there is no constitutional remedy for injuries caused by negligence on the part of prison officials. *See Daniels v. Williams*, 474 U.S. 327, 336, 106 S.Ct. 662, 667, 88 L.Ed.2d 662 (1986). A constitutional violation does not arise absent a showing that plaintiff was subjected to "conditions posing a substantial risk of serious harm,'" and that there was "deliberate indifference" on the part of prison officials to plaintiff's health or safety. *Farmer*, 511 U.S. at 834, 114 S.Ct. at 1977.

A showing of deliberate indifference is also required for purposes of seeking relief under §1983 for inadequate medical care. Specifically, plaintiff must show that there was deliberate indifference to his serious medical needs. *See Hare v. City of Corinth*, 74 F.3d 633, 648-49 (5th Cir.

1996); *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997), *citing Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251  (1976).

Plaintiff's claim against Lieutenant Brown stems from Brown's alleged deliberate indifference in not transporting plaintiff to the medical tier immediately following the June 8, 2004 altercation.  However, there is no evidence reflecting that plaintiff sought medical attention immediately following the incident.  Instead, a review of plaintiff's numerous grievances (rec. doc. 22) reflects that it was not until July 21, 2004, that plaintiff complained of any medical ailments as a result of his involvement in the June 8, 2004 fight.  Specifically, plaintiff complained that he was experiencing "headaches", "neck problems", and was having "trouble sleeping".  Additionally, a review of plaintiff's medical records (rec. doc. 22) shows that it was not until September 24, 2004, that he executed a "Sick Call Request", requesting medical care in connection with pain he was experiencing as a result of scars on his head which he received as a result of his involvement in the June 8, 2004 altercation.  Less than a month later, on October 8, 2004, plaintiff executed a second "Sick Call Request", acknowledging that he had seen a doctor, but complaining that the pain medication prescribed by the doctor "doesn't work".  In accordance with his request, plaintiff, on October 12, 2004, was examined by another physician.  In connection with this medical examination, plaintiff's scars were described as "well-healed" and his continued complaints of pain were attributed to psychosis or malingering.

Plaintiff seeks to hold William Hunter liable based upon his "responsib[ility] for the actions of those under his leadership".  However, a state actor such as Hunter generally may be liable under §1983 only if he "was personally involved in the acts allegedly causing the deprivation of

constitutional rights or [if] a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F. 2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Casualty Co.*, 611 F. 2d 120 (5th Cir. 1980).  Respondeat superior is not a legal theory under which liability can be visited on supervisory personnel such as Hunter. *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978). There is no evidence to suggest that Hunter was personally involved or played a role in the events leading up to the June 8, 2004 altercation and/or the medical care, or lack thereof, which plaintiff received following the fight.

Finally, regarding the claim in plaintiff's amended complaint that he was injured while awaiting treatment at Charity Hospital, the court notes that plaintiff has failed to identify the deputy who allegedly pushed him into a metal food warmer.  The court further notes that under 42 U.S.C. §1997e(a), enacted in 1996 by the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  The United States Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002).  The administrative remedy procedure available to prisoners incarcerated in OPP consists of three steps. This three-step administrative remedy procedure has previously been explained, via affidavit, from OPP counsel, Linda Morin, as follows:

> In the first step, an inmate fills out an Inmate Grievance Form (Form ARP-1) listing the complaint. An initial assessment is made to determine whether the inmate's complaint is grievable, a non-grievable complaint, or a request for service. If the inmate's complaint is found to be grievable, the complaint is assigned for a response. After the first step response is received by the inmate, the inmate may, if dissatisfied with the response, file a Step Two Form seeking to have his complaint reviewed by the Warden. If after receiving his second step response the inmate remains dissatisfied, he may file a third step request to the Sheriff or his delegate.

As noted above, plaintiff has attached to his amended complaint several of his administrative grievances, along with responses to said grievances. Review of plaintiff's attachments reflects that he submitted more than one Inmate Grievance Form (Form ARP-1) complaining that his arm was injured when he was pushed by a deputy into a metal food warmer while awaiting treatment at Charity Hospital. Further review reflects that Sergeant Willie Spears responded to plaintiff's complaint, executing a Step One Response Form (Form ARP-2) which provided:

> I have investigated the incident relative to the complaint taht [sic] you lodged against a deputy. You stated that the deputy pushed you in an [sic] metal food warmer at the CHNO [Charity Hospital in New Orleans] injuring your already injured arm[.] During the course of the investigation it was leardned [sic] that you were un-cooperative with the deputy and questioning him as to why you had to be double cuffed. It was also learned that the deputy removed you from his path as you attempted to block his movemen [sic] through a doorway. You were vey [sic] argumentative, belligerent, and hostile towards the deputy and the misconduct was on your part and not the deputy. Any further actions on your part of belligerence or hostility towards the staff or deputies will result in disciplinary actions taken against you.

There is no evidence reflecting that plaintiff, following his receipt of the above response, pursued the matter by executing a "Step Two Form". Accordingly, plaintiff failed, as required under 42 U.S.C. §1997e(a), to exhaust his administrative remedies with respect to his claimed injury at Charity Hospital at the hands of an unidentified deputy. Plaintiff similarly failed to exhaust his administrative remedies in connection with his complaint arising from his involvement in the June

8, 2004 altercation. Review of plaintiff's numerous grievances (rec. doc. 22) reveals that while he lodged several initial administrative grievance forms in connection with the June, 2004 incident, he failed to follow through on these initial complaints by pursuing the matter to the third-step of OPP's administrative grievance procedure and thereby exhausting his administrative remedies.

Accordingly;

## **RECOMMENDATION**

It is **RECOMMENDED** that the instant §1983 action be **DISMISSED WITH PREJUDICE** as frivolous.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this  20th  day of    June    , 2006.

                                                  ALMA L. CHASEZ
                                    UNITED STATES MAGISTRATE JUDGE